MOFFIT *v.* GRAND RAPIDS RAILWAY CO.

1. CARRIERS — STREET RAILWAYS — STATUS OF PASSENGER NOT CHANGED WHILE TRANSFERRING TO ANOTHER CAR.

Where a passenger paid his fare on a street car and took a transfer to another line, after arriving at the transfer point and alighting for the purpose of boarding the other car he was still a passenger although he was injured before boarding the car, and, in an action against the street railway company for said injuries, the trial judge was in error in instructing the jury that plaintiff was not a passenger unless he had already boarded said car.[1]

2. SAME — TRIAL — INSTRUCTIONS — LIABILITY TO BYSTANDER NOT PRESENTED IN ACTION BY PASSENGER.

Where plaintiff's testimony that he was a passenger was undisputed, the trial judge was in error in instructing the jury as to defendant's liability in case plaintiff was merely a bystander, since said question was not presented by the evidence.[2]

3. APPEAL AND ERROR — COURT WILL NOT DETERMINE QUESTION NOT IN ISSUE.

On reviewing an action by a passenger against a street railway company for personal injuries alleged to have been received by him by reason of the negligence of defendant's conductor, the Supreme Court will not determine whether defendant would have been liable to plaintiff, under the circumstances, had he been merely a bystander.[3]

4. CARRIERS — EVIDENCE ESTABLISHED STATUS AS PASSENGER.

Under the testimony at the close of the case, *held*, that the trial court was in error in refusing to charge the jury that plaintiff was a passenger.[4]

5. SAME — WHETHER PASSENGER LEFT CAR OF OWN VOLITION OR AT REQUEST OF CONDUCTOR CONTROLLING.

Where a passenger on a street car, before reaching his destination, was injured, after alighting from the car,

---

[1]Carriers, 10 C. J. §§ 1052, 1477; [2]Id., 10 C. J. § 1477; [3]Appeal and Error, 3 C. J. § 590; [4]Carriers, 10 C. J. § 1477.

On *status* of street car passenger of person transferring from one car to another, see notes in 6 A. L. R. 1291; 22 A. L. R. 315.

by an automobile backing into him while he was leaning against the street car writing his name, at the conductor's request, in a book as a witness to a previous accident, but whether he left the car at the conductor's request or of his own volition is in dispute, the street car company is liable if the conductor failed to warn plaintiff of his danger although in a position to do so; its liability being that of a carrier if the conductor requested plaintiff to leave the car, but if he left of his own volition a different rule is applicable, since its liability does not altogether depend upon the relation of carrier and passenger, under the circumstances of this case.[5]

6. SAME — PASSENGER WHO ASSISTS CONDUCTOR IN INSPECTING ACCIDENT NOT MERE VOLUNTEER.

A passenger who alights from a street car to aid the conductor in inspecting the damages occasioned by an accident and in signing a book as a witness thereto, is not a mere volunteer to whom the street car company owed no duty to protect him from the negligence of third parties while so doing, but as a passenger desiring prompt transportation to his destination he was acting for his own interest as well as that of the company.[6]

Error to superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted April 8, 1924. (Docket No. 6.) Decided October 6, 1924.

Case by Freeman Moffit against the Grand Rapids Railway Company and Adrian Endtz for personal injuries. Judgment for plaintiff against defendant Endtz only. Plaintiff brings error. Reversed.

*Fred P. Geib,* for appellant.

*Knappen, Uhl & Bryant,* for appellee railway company.

BIRD, J. Plaintiff resides in the city of Grand Rapids. On the evening of August 22, 1922, he left

[5]Carriers, 10 C. J. §§ 1349, 1369; [6]Id., 10 C. J. § 1369.

his home and boarded one of defendant's cars to go to the southwestern part of the city.   He paid his fare and took a transfer to the Grandville avenue line. He rode to the intersection of Market and Monroe, the usual place of transfer, alighted and entered the Grandville avenue car, which was in waiting.   He had been seated only a few moments when he observed an automobile back into the street car.   A moment later the conductor inquired of him if he saw the collision.   He replied that he did.   The conductor then requested him to go out and inspect the damage to the car, and sign his name as a witness, in the event any trouble should ensue.   Plaintiff complied, looked the situation over, and the conductor gave him a pad upon which to sign his name.   At the conductor's suggestion or approval he put the pad against the rounding part of the car near the step, and while signing his name the same automobile backed into the street car again, pinning plaintiff between the automobile and the street car, causing serious injuries, for which he seeks to recover in this action.   Plaintiff recovered a judgment against defendant Endtz, the driver of the automobile, but the jury exonerated the Grand Rapids Railway Company.   Plaintiff has assigned error, and his complaints are all aimed at certain instructions given by the court and for its failure to charge as requested.   The portions of the charge complained of are:

"(1) In determining whether or not the defendant railway company is liable in this case depends first upon the question of fact as to whether or not plaintiff was a passenger on this car.   If he had not boarded the Grandville avenue car at the corner of Market street, but was merely waiting at that point to transfer, I charge you, as a matter of law, that he was not a passenger even though he was waiting to transfer.

"(2) If he had boarded the car but left it of his own choice to see this accident without having been asked to do so by the conductor, or one of the em-

ployees of the defendant railway company, I charge you, as a matter of law, that he was not a passenger within the meaning of the law.

"(3) If he was not a passenger the street railway company would owe him no legal duty either to protect or guard him against the danger of the street or the acts of third persons, such as defendant Endtz, even though the conductor had asked him to sign his name as a witness at the place he claims, for the reason that he would then be merely in the position of a bystander on the street to whom the street railway company, or its employees, would owe no legal duty whatever.

"(4) Unless you find, therefore, by a preponderance of the evidence, both that the plaintiff had boarded this Grandville avenue car before the accident resulting in his injury, and also that after boarding it the conductor asked him to leave the car in order to inspect the damage done to the automobile, your verdict should be no cause of action so far as the defendant railway company is concerned."

1. If plaintiff took passage on defendant's railway line intending to make a journey to the southwestern part of the city, paid his fare and took a transfer to the Grandville avenue line, the usual place of transfer, he was a passenger while on defendant's car; he was a passenger while making the transfer, or while waiting to transfer, and he was a passenger after he was seated in the Grandville avenue car.   This question was fully considered and settled in *Wilson* v. *Railway,* 167 Mich. 118, where it was said, in part, by Mr. Justice STONE:

"We are also of the opinion that the weight of authority in this country is to the effect that the relation of passenger and carrier continues while the passenger is transferring from one car to another, he having been furnished a ticket enabling him to do so, when a transfer from one street car to another is a part of a continuous trip.   6 Cyc. pp. 541, 542; *Baldwin* v. *Railroad Co.,* 68 Conn. 567 (37 Atl. 418) ; *Walger* v. *Railway Co.,* 71 N. J. Law, 356 (59 Atl. 14) ; *Citizens' Street R. Co.* v. *Merl,* 134 Ind. 609 (33

N. E. 1014).   See note to *Glenn* v. *Railroad Co.*, 165
Ind. 659 (75 N. E. 282, 2 L. R. A. [N. S.] 872, 6 Ann.
Cas. 1033, 112 Am. St. Rep. 255) ; *Keator* v. *Traction
Co.*, 191 Pa. 102 (43 Atl. 86, 44 L. R. A. 546, 71
Am. St. Rep. 758) ; *Baltimore, etc., R. Co.* v. *State,
Use of Hauer*, 60 Md. 449; *Chicago, etc., R. Co.* v.
*Winters*, 175 Ill. 293 (51 N. E. 901) ; *Conroy* v. *Railway
Co.*, 96 Wis. 243 (70 N. W. 486, 38 L. R. A.
419)."

In view of this holding it will be unnecessary to
consider the question again.   The trial court was in
error in charging as he did upon this aspect of the
case.

2. We are also of the opinion that the trial court
was in error in charging the jury that if plaintiff left
the car without being requested by the conductor to
do so he was not a passenger.   If it be conceded that
plaintiff left the car temporarily on his own volition
to view the commotion or the damage to the automobile,
he would not thereby lose his character as a
passenger.   It is stated that:

"As a general rule a passenger does not lose his
character as such by merely temporarily alighting at
an intermediate station, with the express or implied
consent of the carrier, for any reasonable and usual
purpose, such as the procuring of refreshments, the
sending or the receiving of telegrams, or for the purpose
of exercising by walking up and down the platform,
or even from motives of curiosity."   10 C. J.
p. 628.

"Where the relation of carrier and passenger is once
established it continues until terminated by the
voluntary act of the passenger, or the act of the
carrier, under circumstances justifying its termination,
and extends to the arrival of the passenger at
his destination, and a temporary departure from the
train for some good or reasonable cause without the
intent to abandon the transportation, will not end the
relation."   6 Cyc. p. 541.

228—Mich.—23.

In *Parsons* v. *Railroad Co.*, 113 N. Y. 355 (21 N. E. 145, 10 Am. St. Rep. 450), Parsons was a passenger and left the train temporarily, when it stopped at a station, to serve some purpose of his own. He was run over by another train. In an action for damages the court held that he was yet a passenger, saying in part:

"We do not think a passenger on a railroad train loses his character as such by alighting from the cars at a regular station from motives of either business or curiosity, although he has not yet arrived at the terminus of his journey. It cannot properly be said, we think, if a passenger leaves a train for the purpose of obtaining refreshments at a regular station, or transacting business during its stay there, but intending to return and continue his passage, ceases to be a passenger, or loses the right of being protected by the regulations which the company have provided for the safety of persons traveling on its cars and using its station grounds."

In *Central of Georgia R. Co.* v. *Storrs*, 169 Ala. 361 (53 South. 746), it was held that:

"Where a passenger train has stopped at a station, passengers, during the stop, may walk out of the car in which they are seated onto the station platform or over the car platform into another car, without losing their rights to protection as passengers."

In *Texas Midland Railroad* v. *Ellison*, 39 Tex. Civ. App. 172 (87 S. W. 213), the court said:

"A passenger may alight, from motives of business or curiosity, from a train on which he is riding, at a switch track near an intermediate station, where the train stops, in order to permit another train to pass, without losing his status and rights as a passenger."

The case of *Arkansas Central R. Co.* v. *Bennett*, 82 Ark. 393 (102 S. W. 198), is to the same effect, where it is said:

"A passenger on a freight train does not lose his

character as a passenger by leaving the train to talk with an acquaintance during the time cars are being switched at a station."

In discussing the question the Indiana court said:

"As a passenger he has the right to stand or walk on the platform provided at stations for the convenience of passengers while the train is stopping for refreshments and in a street alongside of the track and platform." *Jeffersonville, etc., R. Co.* v. *Riley*, 39 Ind. 568.

And it is held in *Layne* v. *Railway Co.*, 66 W. Va. 607 (67 S. E. 1103), that a passenger has a right to leave the train at an intermediate station, even from motives of curiosity.

See, also, *Chicago, etc., R. Co.* v. *Sattler*, 64 Neb. 636 (90 N. W. 649, 57 L. R. A. 890, 97 Am. St. Rep. 666), where the rule is discussed at some length.

The same rule appears to have been applied to passengers traveling on steamboats. *Dice* v. *Transportation Co.*, 8 Or. 60 (34 Am. Rep. 575) ; *Dodge* v. *Steamship Co.*, 148 Mass. 207 (19 N. E. 373, 2 L. R. A. 83, 12 Am. St. Rep. 541) ; *Keokuk Northern Line Packet Co.* v. *True*, 88 Ill. 608; *Hrebrik* v. *Carr*, 29 Fed. 298.

In the last case cited it was said:

"In behalf of the defendant it is said that if decedent, as his wife says, attempted to go ashore to get tobacco, he placed himself outside his contract as a passenger, and the defendant was under no obligation to provide him a means of egress from the steamer for such purpose. In my opinion, the decedent went on board as a passenger, had the right to go ashore when he did, and it was the duty of the defendant to provide a safe means of passage from the steamer to the pier. The necessity on the part of a passenger, who has taken his position as a passenger, to return to the pier is a common incident of travel. It is constantly done to find lost baggage, to speak to a friend, and may be done to purchase tobacco by anyone addicted to the use of that weed."

So far we have considered the rule with reference to steam railways and steamboats only. The rule appears to have been extended to passengers riding upon street cars.

Plaintiff became a passenger on the platform on one of defendant's surface street cars, and he alighted to permit other passengers to alight, and was injured. The contention was made that by alighting he ceased to be a passenger. The court said:

"But the plaintiff did not cease to be a passenger by leaving the car momentarily for this cause. He could not have been required to pay a new fare. The necessity or courtesy which prompted his action did not terminate his status as passenger." *Tompkins* v. *Railway Co.*, 201 Mass. 114 (87 N. E. 488, 20 L. R. A. [N. S.] 1063, 131 Am. St. Rep. 392).

In *Zeccardi* v. *Railroad Co.*, 190 N. Y. 389 (83 N. E. 31, 17 L. R. A. [N. S.] 770), plaintiff left the street car on which he was riding to separate the conductor and his friend who were fighting. The conductor assaulted plaintiff and injured him. He brought suit against the company. The court disagreed as to the liability, but both sides conceded that plaintiff had a right to temporarily leave the car, and that it did not affect his status as a passenger. The majority opinion says:

"It is also true that a passenger during his journey may alight from the car without losing his status as passenger. *Parsons* v. *Railroad Co.*, 113 N. Y. 362 (21 N. E. 145, 10 Am. St. Rep. 450)."

In *Fornoff* v. *Columbia Taxicab Co.*, 179 Mo. App. 620 (162 S. W. 699), it was said:

"Where a passenger in the taxicab of a common carrier enters a saloon to procure change to pay the chauffeur for that part of the journey which has already been made, the relation of carrier and passenger still existed; the passenger not yet having reached his destination."

There is no apparent reason why the rule with reference to street cars should be different from the one applying to steam cars and steamboats where the company is using the highway as a transfer point.

Plaintiff was not a pedestrian.   He had not yet finished his journey.   Had that been the end of his journey a different question would have been presented. He was not attempting to cross the street or make any use of it except as a passenger.   It is conceded he was complying with a request of the conductor at the moment he was injured and, therefore, it matters little whether he left the car on his own volition or at the request of the conductor.   Plaintiff was not injured because he left the car for a moment, but he was injured, while assisting the conductor, by a careless and negligent third party, which injury he claims could have been avoided had the conductor exercised ordinary care to protect him.

3. This question is much discussed in the briefs and many authorities are cited.   We do not feel called upon to consider this question, as we are unable to find testimony which would justify this portion of the charge.   Plaintiff testified that he left the initial car and went to and entered the Grandville avenue car.   This is disputed by no witness.   The conductor denied that he invited him to go out, but he did not appear to know whether plaintiff had entered the car.   One or two witnesses testified that they had not observed plaintiff.   The testimony was of a negative character and not such as to make that question one of fact, and it should not have been submitted to the jury.   Under this view it will be unnecessary to consider and determine the question whether the defendant company would be liable to plaintiff if he were simply a bystander who had been requested to sign his name as a witness.

4. This item is disposed of by the discussion of the other questions.

As the testimony stood at the close of the case we think the trial court was in error in refusing to charge the jury that plaintiff, under the proofs, was a passenger. It will be unnecessary to consider the other questions raised.

The judgment is reversed, a new trial ordered, with costs to plaintiff against the defendant Grand Rapids Railway Company.

WIEST, J., concurred with BIRD, J.

McDONALD, J. (*concurring*). I agree that the judgment must be reversed for the reasons stated by Mr. Justice BIRD, but as other questions involved will arise on a new trial, I think they should be disposed of at this time.

The defendant claims that in any view of the case no breach of duty was shown, and that therefore the trial court should have granted its request for a directed verdict. In this case the defendant's duty to guard the plaintiff against the negligence of third parties in a public street does not arise altogether out of the relation of carrier and passenger. He was not injured while alighting or in making the transfer. He had safely made his way to the connecting car and boarded it. He afterwards either left that car of his own volition or by express invitation of the defendant's conductor. If he left the car of his own volition he was still a passenger, but as such the defendant owed him no duty in protecting him against the negligence of third parties in the street. A different rule applies if he left the car by express invitation of the conductor. Having invited him off the car to inspect the damages and then write his name in the witness book, it became the duty of the defendant, while he was thus engaged, and while his attention was diverted from the perils of the street, to warn him of any observable danger, or of any danger that

might reasonably be anticipated.   The danger arose while he was leaning against the car writing his name, in which position he could not see the automobile back towards him.   The conductor stood by and observed the danger in time to jump to a place of safety.   There is evidence from which a jury might find that, if the conductor had been reasonably careful for the protection of the plaintiff, he could have warned him in time to have avoided the accident. This evidence presented a question for the jury and the court did not err in submitting it to them.

It is further contended that in assisting the conductor the plaintiff had no interest in the work and was therefore a mere volunteer to whom the defendant owed no duty.   We do not agree with this contention.   Presumably the plaintiff was interested in arriving at his destination without delay.   Before this could be done the conductor, acting under instructions of his company, must inspect the damage occasioned by the prior accident and secure the names of witnesses thereto.   In assisting him the plaintiff, as a passenger desiring prompt transportation to his destination, was acting for his own interest as well as that of the defendant.   He was therefore not a mere volunteer.   See *McIntire Street R. Co.* v. *Bolton*, ·43 Ohio St. 224 (1 N. E. 333, 54 Am. Rep. 803), cited with approval in *Johnson* v. *E. C. Clark Motor Co.*, 173 Mich. 277 (44 L. R. A. [N. S.] 830).

The judgment is reversed, with costs to the plaintiff.

CLARK, C. J., and SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred with MCDONALD, J.